**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NORMAN GERALD DANIELS III, | Case No.: 1:13-cv-00202-AWI-SAB (PC) |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS REGARDING THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT |
| STU SHERMAN, | [ECF Nos. 79, 87, 98] |
| Defendant. | |

Plaintiff Norman Gerald Daniels III is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

Currently before the Court is Plaintiff's motion for summary judgment, filed November 14, 2016, and Defendant Sherman's motion for summary judgment, filed January 6, 2017.

**I.**

**PROCEDURAL HISTORY**

This action is proceeding against Defendant Shu Sherman for a violation under the Americans with Disabilities Act (ADA).

On November 23, 2015, Defendant filed an answer to the complaint. On November 30, 2015, the Court issued the discovery and scheduling order.

On November 14, 2016, Plaintiff filed a motion for summary judgment. Defendant filed an opposition to Plaintiff's motion on January 13, 2017.

On January 6, 2017, Defendant filed a motion for summary judgment. Plaintiff filed an opposition to Defendant's motion on May 15, 2017. Defendant filed a reply on July 10, 2017.

On February 24, 2017, Plaintiff filed a motion to oppose counsel Rhoan's declaration of discovery. Defendant filed an opposition March 9, 2017.

## II.

## LEGAL STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In resolving cross-motions for summary judgment, the Court must consider each party's evidence. Johnson v. Poway Unified Sch. Dist., 658 F.3d 954, 960 (9th Cir. 2011). Plaintiff bears the burden of proof at trial, and to prevail on summary judgment, he must affirmatively demonstrate that no reasonable trier of fact could find other than for him. Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). Defendants do not bear the burden of proof at trial and in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, Soremekun, 509 F.3d at 984 (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de

Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted).

In arriving at this recommendation, the Court has carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

**III.**

**SUMMARY OF PLAINTIFF'S COMPLAINT**

Plaintiff is legally blind and his vision cannot be corrected beyond 20/200. Plaintiff seeks access to visual equipment to enable him to read and write like a "normal person," and he unsuccessfully attempted to resolve the issue through the prison's remedy process. Plaintiff seeks a personal magnifier so that he may read and write in his cell. Plaintiff alleges that magnifying eyeglasses are insufficient to treat his vision impairment; the small card magnifier offered to him was a "sad attempt" and provided insufficient magnification; he is entitled to read and write in his cell; a personal magnifier is a medical appliance with which he should be provided as a disabled inmate; and staff "twisted" the Armstrong remedial plan to deny his request for a personal magnifier. Prison staff, however, take the position that a personal magnifier is not a medical appliance and it contains glass which can be used as a weapon; and that Plaintiff's disability is sufficiently addressed through adequate access to shared ADA equipment, a page magnifier, and the pair of glasses he received to help with his disability.

**IV.**

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff moves for summary judgment because on November 3, 2016, a medical doctor prescribed Plaintiff with a high-powered magnifying glass, which Plaintiff construed as an admission that Defendant Sherman violated his rights.

# V.

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant Sherman moves for summary judgment because the undisputed facts demonstrate that Plaintiff was denied a magnifying glass because it was not medically necessary. Furthermore, Plaintiff was never denied access to SATF's services, programs, or activities given to visually-disabled inmates on the basis of his blindness. In addition, SATF was under no obligation to provide him with a personal magnifying glass. Defendant also argues that Plaintiff's claims for relief cannot legally be granted.

### A. Plaintiff's Motion to Oppose Counsel Rhoan's Declaration of Discovery

As previously stated, on February 24, 2017, Plaintiff filed a motion to oppose defense counsel Rhoan's declaration of discovery. Defendant filed an opposition on March 9, 2017.

In moving for summary judgment, Defendant Sherman's evidence consists of a declaration by defense counsel documenting Plaintiff's failure to respond to requests for admissions, set one, and submission that such requests were therefore deemed admitted. (ECF No. 87-13 at 1-2, 41-44.) In particular, Defendant Sherman requested Plaintiff's admission that: (1) Plaintiff's lawsuit only pertained to incidents which occurred between June 17, 2010, to January 18, 2012, as indicated by the dates in Plaintiff's own first amended complaint; and that (2) Plaintiff's lawsuit only pertained to his inability to obtain a personal magnification device from CDCR employees working at SATF. (Id.)

Under Rule 36(a) of the Federal Rules of Civil Procedure, "[a] party may serve on any other party a written request to admit [in an action]… facts, the application of law to fact, or opinions about either. Fed. R. Civ. P. 36(a)(1). A matter is deemed admitted if the party to whom the request is directed fails to serve a timely response. Fed. R. Civ. P. 36(a)(3). A matter admitted under Rule 36 is "conclusively established" unless the court, on motion, permits the admission to be withdrawn or amended. Fed. R. Civ. P. 36(b). "Such a matter 'cannot be overcome at the summary judgment stage by contradictory affidavit testimony or other evidence in the summary judgment record.'" Hologic, Inc. v. SenoRx, Inc., No. C-08-00133 RMW, 2009 WL 8760730, at *6 (N.D. Cal. Oct. 30, 2009) (quoting In re Carney, 258 F.3d 415, 420 (5th Cir. 2001)). "[T]he court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not

persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits.' Id. "Rule 36(b) is permissive, not mandatory, with respect to the withdrawal of admissions." Conlon v. United States, 474 F.3d 616, 621 (9th Cir. 2007).

Defendant served the request for admissions, set one, on December 21, 2015, and Plaintiff had forty-five days thereafter to respond. However, Plaintiff did not respond to the request for admissions, set one. In the opening paragraph of the request for admission, set one, Plaintiff was warned that, under Federal Rules of Civil Procedure 36(a), a failure to timely respond to these requests would result in the matters contained within the requests to be deemed admitted as a matter of law.

By way of motion filed on February 24, 2017, Plaintiff opposes defense counsel's declaration (ECF No. 98.) Plaintiff contends that he made a "terrible mistake in where in the rush of papers and the in[]ability to keep track of paper work, I failed to realize that I missed a document of discovery." (Id. at 1.) In his defense, Plaintiff submits "I am legally blind and I have limited access to equipment and persons . . . [and] [a]fter going through multiple documents, I found that the [Requests for Admissions were] accidentally separated from Mr. Rhoan's declaration[.]" (Id.) Plaintiff submits this opposition in "good faith," because he did timely respond to Defendant Sherman's first set of interrogatories back in February 2016. (Id. at 2.)

Here, denying the withdrawal of the admissions will not preclude the entire resolution of the case on the merits, but simply defines the time frame of the litigation as set forth in the complaint, and Defendant Sherman will be substantially prejudiced by the withdrawal of Plaintiff's admission in this case.[1] Although Plaintiff responded to Defendant's request for interrogatories in February 2016, Plaintiff fails to explain what occurred in the one year between service of the request for admissions and his discovery of such requests upon the filing of Defendant's motion for summary judgment. Although Plaintiff admits that he made a mistake and could not keep track of "the rush of papers," pro

---

[1] In Diggs v. Keller, 181 F.R.D. 468, 469 (D. Nev. 1998), the District of Nevada held that "before a matter may be deemed admitted against a pro se prisoner for failure to respond to a request, the request for admission should contain a notice advising the party to whom the request is made that, pursuant to Rule 26 …, the matter shall be deemed admitted unless said request is responded to" within the time frame allowed by the court. The Diggs notice provision has been implemented by several California district courts. See Medina v. Donahoe, 854 F.Supp.2d 733, 748 (N.D. Cal. 2012); Nieto v. Hodge, No. 1:10-cv-01397 AWI JLT (PC), 2012 WL 4833398, at *1 (E.D. Cal. Oct. 10, 2012). As previously stated, Defendant Sherman's request for admissions contained a notice stating the consequences of failing to abide by Rule 36(1), which satisfies the Diggs notice requirement.

se litigants must litigate their cases and do not possess greater rights than those who are represented. Jacobsen v. Filler, 790 F.2d 1362, 1364-65 & 1365 n.5 (9th Cir. 1986). Accordingly, the Court finds there is no basis to withdraw the request for admissions. Because Plaintiff did not timely respond to the request for admissions and the Court has ordered those requests deemed admitted, the facts set forth in the requests for admissions, set one, are deemed admitted and conclusively established. (ECF No. 87-13, Ex. B.)

**B.    Undisputed Facts[2]**

1.    Plaintiff's lawsuit is limited to his alleged denials of a personal magnifying glass between June 17, 2010, and January 18, 2012, while he was housed at the California Substance Abuse and Treatment Facility and State Prison (SATF), in Corcoran, California. (Declaration of Erick J. Rhoan (Rhoan Decl.) at ¶ 3, Ex. B.)

2.    Plaintiff suffers from diabetic retinopathy, a degenerative eye condition, which has resulted in Plaintiff being completely blind in his right eye, and worsening vision in his left. (Rhoan Decl., Ex. A (Daniels Dep.) at 15:1-17:1.)

3.    Eventually, Plaintiff will go completely blind in both eyes. (Daniels Dep. at 23:16-24:12.)

4.    Between June 17, 2010, and January 18, 2012, Plaintiff was never prescribed a personal magnifying glass by any licensed CDCR physician. (Daniels Dep. at 76:22-77:4, 78:2-12, 122:13-17.)

5.    Plaintiff asked Dr. Grossman about a magnifier. (Daniels Dep. at 31:24-32:18; Ex. A, Set II.)

6.    In October 2016, Plaintiff was prescribed a five-times magnifying glass. (Declaration of D. Sanchez (Sanchez Decl.) ¶ 20, Ex. F; Pl.'s Mot. for Summ. J. 2, ECF No. 76.)

7.     An inmate is a class member of the Armstrong v. Brown class action if he or she suffers from hearing, vision, mobility, learning, or kidney disabilities.[3] (Sanchez Decl. ¶ 4.)

---

[2] The statement of undisputed facts is compiled from both parties submission where not in dispute. The Court has deleted any reference to a statement of fact that is not germane to the issue in this case.

[3] The Armstrong class action is based on a case from the Northern District of California in which several disabled inmates brought suit against CDCR claiming discrimination on the basis of their disabilities. (Sanchez Decl. ¶ 4.) In 1996, the

8. Plaintiff is a class member of the <u>Armstrong</u> class action because he is visually disabled CDCR inmate. (Sanchez Decl. ¶ 9, Exs. C-E.)

9. On October 28, 2010, Plaintiff had a post-operative check-up in which the ophthalmologist gave "low-vision consult – magnifiers." (Ex. L, Set I, at p. 62.)

10. On November 17, 2010, the first level of review denied Appeal Log No. SATF-M-10-03900 because Plaintiff had access to full-page magnifiers in his housing unit and the law library. (Declaration of J. Corral, Ex. A (Corral Decl. at 002, 012.)

11. SATF's Chief Medical Executive denied Log No. SATF-M-10-03900, at the second level of review after reviewing Plaintiff's unit health record because a personal magnifying glass was not medically necessary. The Chief Medical Executive also based his decision, in part, on Dr. Grossman's note that Plaintiff could use his eyeglasses in conjunction with housing unit magnifiers and law library devices. (Corral Decl., Ex. A at 006-009.)

12. The first level of review denied Plaintiff's second CDCR Form 1824, Log No. SATF-E-11-02395, because a personal magnifying glass was not deemed medically necessary and because Plaintiff had adequate access to magnification devices in his housing unit and law library. (Corral Decl., Ex. B at 011-013.)

13. The second level of review denied Log No. SATF-E-11-02395 because a personal magnifying glass was not deemed medically necessary and because Plaintiff was also given a tapping cane and vision-vest. (Corral Decl., Ex. B at 016-020.)

14. SATF provides extensive training to its staff on a yearly, monthly, and sometimes weekly basis, on how to effectively communicate with disabled inmates in order to meet its obligations under the Americans with Disabilities Act and the Armstrong Remedial Plan. (Sanchez Decl. ¶ 14.)

---

case was settled and the parties entered into a stipulated agreement to govern how CDCR would facilitate disabled inmate access to CDCR's programs, services, and activities. (<u>Id.</u>) In 1999, the <u>Armstrong</u> Remedial Plan was implemented. (<u>Id.</u>) The <u>Armstrong</u> Remedial Plan is a court-ordered document and constitutes court-ordered injunctive relief. (<u>Id.</u>) If any provision within the Remedial Plan conflicts with the California Code of Regulations or CDCR's Department of Operations Manuel, the Remedial Plan controls. (<u>Id.</u>)

15.     SATF staff are trained to comprehend what life is like in a prison as an inmate with a physical disability.  (Sanchez Decl. ¶ 15.)

16.     The objective of this training is to help SATF staff understand each inmate's disability and how to ensure these inmates have equal access to SATF's services, programs, and activities. (Sanchez Decl. ¶ 15.)

17.     All SATF staff are trained to effectively communicate with disabled inmates under the Armstrong Remedial Plan.  (Sanchez Decl. ¶ 14.)

18.     Part of this training includes SATF staff undergoing simulations of various physical disabilities that teaches them what it is like to have such disabilities.  (Sanchez Decl. ¶ 15.)

19.     SATF staff are trained on the various types of vision-disabilities that exist, such as glaucoma, cataracts, and diabetic retinopathy.  (Sanchez Decl. ¶ 15.)

20.     SATF staff are trained on how to better assist visually-disabled inmates, such as reading documents to them or providing those documents in Braille, or arranging for that inmate to be escorted by another inmate within the prison to attend yard, vocational classes or other programs. (Sanchez Decl. ¶ 15.)

21.     Plaintiff is classified as a "Disability impacting Placement – Vision," or "DPV," inmate because he has a vision impairment not correctable to a central vision acuity of 20/200, or better, even with corrective lenses.  (Daniels Dep. at 14:8-14:25; Sanchez Decl. ¶ 9, Ex. A at 008, Ex. B at 006, Exs. C-E.)

22.     The medical verification process is also used in determining any ADA discrimination issues.  (Armstrong Remedial Plan IV, B; IV, B 2, at. 13.)

23.     DPV inmates do qualify for accessibility equipment and Durable Medical Appliances. (Armstrong Remedial Plan E, F. G; II, E, I, at p. 4; F, G at p. 7.)

24.     A magnifier is not a part of the State's medical appliance formulary (California Correctional Health Care Services: Durable Medical Equipment and Medical Supply Formulary-Ophthalmology and Optometry; D. Sanchez Ex. G; Daniels Dep. at 121:6-11, Ex. A, Set II.)

8

25.     As a DPV inmate, Plaintiff has access to full page magnifiers that are two-times normal magnification in all SATF housing facilities to allow him to read printed text.  (Sanchez Decl. ¶ 10, Ex. A at 012, Ex. B at 021-021; Daniels Dep. at 113:13-15.)

26.     Plaintiff has access to an Optelec ClearView 500, a desktop machine that magnifies reading materials, which is available in the law library.  (Sanchez Decl. ¶ 11, Ex. A at 012, Ex. B at 043, Daniels Dep. at 114:6-115:9.)

27.     Plaintiff has access to a Galileo Reading System, a machine that scans written material and reads it aloud to the user, which is also available in the law library.  (Sanchez Decl. ¶ 11, Ex. A at 012, Ex. B at 043; Daniels Dep. at 115:22-116:6.)

28.     Plaintiff has access to disability-accessible computers in the law library where, as a DPV inmate, he is given priority access to use, sometimes with an assistant to help Plaintiff use these computers.  (Sanchez Decl. ¶ 11, Ex. B at 043.)

29.     Plaintiff has access to the Talking Book Program, which allows disabled inmates to keep audiobook machines in their individual housing units so they can play audiobooks.  (Sanchez Decl. ¶ 12, Ex. B at 017-020; Daniels Dep. at 116:9-117:4.)

30.     Plaintiff has access to Braille equipment in the law library, such as Braille typewriters. (Sanchez Decl. ¶ 13, Ex. B at 020.)

31.     In February or March 2010, Plaintiff was prescribed a tapping cane that Plaintiff uses to navigate his way around the prison.  (Sanchez Decl. ¶ 20, Ex. E; Daniels Dep. at 29:20-30:10.)

32.     In August or September 2009, Plaintiff was given a vision-test that he wears to indicate that he is a DPV inmate.  (Sanchez Decl. ¶ 20, Ex. E; Daniels Dep. at 28:23-29:7.)

33.     Between June 17, 2000, and January 18, 2012, Plaintiff frequented the E-Facility law library, sometimes twice a day, to use its facilities and visual-aid devices.  (Declaration of J. Barba (Barba Decl.), Exs. A-C.)

34.     While he was there, Plaintiff used the law library's ADA computers, Optelec readers, and Galileo machines.  (Barba Decl., Ex. A.)

35.     Providing high-powered personal magnification glasses to every visually-disabled inmate is outside the current range of services offered to DPV inmates under the *Armstrong* Remedial Plan.  (Daniels Dep. at 122:6-12.)

36.     The <u>Armstrong</u> Remedial Plan mandates that CDCR provide Disability Placement Program inmates with appropriate health care appliances, such as magnifying glasses, and a means to request such appliances.  (Sanchez Decl. ¶ 16.)

37.     A health care appliance is any assistive device or medical support equipment which has been prescribed and approved by a licensed CDCR physician.  (Sanchez Decl. ¶ 16.)

38.     Under the Disability Placement Program, health care appliances are prescribed on an individual basis based on whether they have been deemed medically necessary for that inmate so that he or she can have equal access to prison services, programs, or activities.  (Sanchez Decl. ¶ 16.)

39.     If that inmate is indigent, then the health care appliance will be provided at state expense, so long as a CDCR physician it.   (Sanchez  Decl. ¶ 16.)

40.     Plaintiff's five-times magnifying glass that was prescribed to him in October 2016 is now considered Plaintiff's health care appliance.  (Sanchez Decl. ¶ 20, Ex. F.)  Disabled-Inmate Access to Lists of Available Medical Devices Under the <u>Armstrong</u> Remedial Plan.

41.     CDCR provides inmates access to the MaxiAids catalog, which provides them with the ability to purchase non-medical items that would assist with their activities of daily living.  Inmates can purchase several devices from this catalog, ranging from visual aids and magnifying glasses, to speech and hearing aids – subject to CDCR approval.  (Sanchez Decl. ¶ 21.)

42.      MaxiAids catalogs are available in each of SATF's housing facilities.  (Sanchez Decl. ¶ 21.)

43.     Plaintiff has made use of the MaxiAids catalog several times.  (Daniels Dep. at 43:20-44:5; 47:14-48:11; 54:10-14; 65:21-25.)

**C.     Findings on Parties' Motions**

As previously stated, Plaintiff is proceeding on a claim under the ADA for denial of a personal magnifying glass.

Title II of the ADA applies to the services, programs, and activities provided for inmates by jails and prisons. Pennsylvania Dept. of Corrections v. Yeskey, 524 U.S. 206, 208-13 (1998); Simmons v. Navajo County, Ariz, 609 F.3d 1011, 1021-22 (9th Cir. 2010); Pierce v. County of Orange, 526 F.3d 1190, 1214-15 (9th Cir. 2008). "To establish a violation of Title II of the ADA, a plaintiff must show that (1) [he] is a qualified individual with a disability; (2) [he] was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of [his] disability." Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002); accord Simmons, 609 F.3d at 1021; McGary v. City of Portland, 386 F.3d 1259, 1265 (9th Cir. 2004).

In order "to recover monetary damages under Title II of the ADA, a plaintiff must prove intentional discrimination on the part of the defendant." Duvall v. County of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001). The standard for intentional discrimination is deliberate indifference, "which requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." Id. at 1139. An ADA plaintiff must both "identify 'specific reasonable' and 'necessary' accommodations that the state failed to provide" and show that defendant's failure to act was "a result of conduct that is more than negligent, and involves an element of deliberateness." Id. at 1140.

1.   Plaintiff's Motion for Summary Judgment

Plaintiff seeks summary judgment based on the fact that on November 3, 2016, Dr. Hashimi ordered him a magnifier. Plaintiff argues, "[t]here is plenty of stipulations and safeguards within the consent decree which will allow for those inmates to request the proper aide and within reason receive such aide. I have overwhelming evidence, which is paperwork in which I asked the State of California for the proper aide for which I could have and would have lived a near normal life. If this evidence is to be presented to the jury I have no doubt that the jury would find the defendant guilty of the facts at hand. In the ARP, there [are] several policy and procedures which qualify inmates for accommodations. Those accommodations have a clause 'include but not limited to:' when it describes the type of appliances that the State has agreed to. In the actual list, the word 'magnifier' is used to

11

describe the medical appliances which are to be provided to an inmate for such accommodations." (Mot. at 2-3.)

Plaintiff seeks several different forms of injunctive relief to be enforced against the California Department of Corrections and Rehabilitation (CDCR), including: (1) all CDCR personnel employed at "ADA/medical prison[s]" to undergo sensitivity training to better deal with disabled prisoners; (2) that CDCR enforce "ADA issues" regarding accessibility to "life" functions; (3) that CDCR recognize personal magnifiers as health care appliances and issue them to inmates who need them; (4) for CDCR to "provide all [visually-disabled] inmates" with personal magnification devices; and (5) for CDCR to provide inmates a list of available visual aids and devices for inmate purchase. (Pl.'s First Am. Compl. (FAC) at 13-14; Rhoan Decl., Ex. A (Daniels Dep. at 99:20-100:18, ECF No. 87-13).

Plaintiff is not entitled to the injunctive relief that he requests. The purpose of a temporary restraining order or a preliminary injunction is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined. <u>University of Texas v. Camenisch</u>, 451 U.S. 390, 395 (1981). "A plaintiff seeking a preliminary injunction [or temporary restraining order] must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." <u>Winter v. Natural Resources Defense Council, Inc.</u>, 555 U.S. 7, 20 (2008).

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." <u>Mazurek v. Armstrong</u>, 520 U.S. 968, 972 (1997) (quotations and citations omitted) (emphasis in original). A party seeking a temporary restraining order or preliminary injunction simply cannot prevail when that motion is unsupported by evidence.

Federal courts are courts of limited jurisdiction and in considering a request for preliminary injunctive relief, the Court is bound by the requirement that as a preliminary matter, it have before it an actual case or controversy. <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95 102 (1983); <u>Valley Forge Christian Coll. V. Ams. United for Separation of Church and State, Inc.</u>, 454 U.S. 464, 471 (1982). If the Court does not have an actual case or controversy before it, it has no power to hear the matter in

question.  Id.  Requests for prospective relief are further limited by 18 U.S.C. § 3626(a)(1)(A) of the Prison Litigation Reform Act, which requires that the Court find the "relief [sought] is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right."

### a. Plaintiff's Claims for Injunctive Relief are Precluded by the Armstrong Remedial Plan

Where a plaintiff is a member in a class action seeking the same relief, a district court may dismiss those claims that duplicate the class action's allegations and prayer for relief.  Crawford v. Bell, 599 F.2d 890, 892-93 (9th Cir. 1979).  Dismissal of duplicative claims serves to avoid concurrent litigation and potentially inconsistent results.  Pride v. Correa, 719 F.3d 1130, 1137 (9th Cir. 2013).  However, individual claims for injunctive relief that are distinct from claims for systemic relief are not barred by membership in class action litigation.  Id.  Nonetheless, if an inmate seeks systemic injunctive relief on behalf of all prison inmates, then class action membership bars that relief as duplicative.  Id. at 1138.

### 1). CDCR Staff are Already Trained to Properly Interact with Disabled Inmates and Also Provides Sensitivity Training

As previously stated, Plaintiff requests that the Court order all CDCR personnel working in ADA-designated prisons to undergo sensitivity training.  (FAC at 13.)  Plaintiff argues that CDCR staff does not understand the necessity of reading and writing.  (Daniels Dep. at 105:25-106:4.)

Contrary to Plaintiff's claim, under the Armstrong Remedial Plan, all SATF staff are regularly on how to effectively communicate with disabled inmates.  (Sanchez Decl. ¶ 14.)  Such training includes SATF staff participating in simulations of various physical disabilities that teaches them what it is like to have such disabilities.  (Sanchez Decl. ¶ 15.)  The objective of the training is to assist SATF staff to understand each inmate's disability and how to ensure these inmates' access to SATF's services, programs, and activities.  (Sanchez Decl. ¶ 15.)  Staff are also trained on the various types of vision-disabilities that exist, such as glaucoma, cataracts, and diabetic retinopathy.  (Sanchez Decl. ¶ 15.)  In addition staff are trained on how to better assist visually-impaired inmates, such as reading documents to them or providing those documents in Braille, or arranging for that inmate to be escorted

by another inmate within the prison to attend yard, vocational classes, or other programs.  (Sanchez Decl. ¶ 5.)  Because sensitivity training already exists under the Armstrong Remedial Plan, Plaintiff's request for a court order for such training must be denied.

2). <u>CDCR Already Provides Disabled Inmates with Appropriate Health Care Appliances Along with Means to Request Them</u>

In Plaintiff's second, third, fourth, and fifth requests for injunctive relief, Plaintiff seeks CDCR to provide all disabled inmates with appropriate medical devices, classify personal magnifying glasses as a health care appliance, and provide CDCR inmates with a list of available health care appliances that they can purchase.  (FAC at 13-14; Daniels Dep. at 107:1-110:10.)

Contrary to Plaintiff's contention, the Armstrong Remedial Plan mandates that CDCR provide each disabled inmate with appropriate health care appliances, such as magnifying glasses, as a means to request such appliances.  (Sanchez Decl. ¶ 16.)  Disabled inmates are routinely monitored to see if they need a health care appliance, even when they are paroled; and then those appliances that are medically necessary are provided to the inmate.  (Sanchez Decl. ¶ 17.)  In this case, Plaintiff was provided a tapping cane, vision-vest, and eyeglasses because medical staff deemed those accommodations medically necessary.  (Sanchez Decl. ¶ 20, Ex. E; Daniels Dep. at 28:23-29:7, 29:20-30:10; FAC at 4-5.)  In addition, if a disabled inmate believes he needs a specific type of health care appliance, he may request one through the CDCR Form 1824 process.  (Sanchez Decl. ¶ 17.)  A disabled inmate can also ask a licensed CDCR physician for a medical appliance.  (<u>Id.</u>)  If an inmate is indigent, the health care appliance will be provided at state expense, so long as a CDCR physician prescribed it.  (Sanchez Decl. ¶ 16.)

The <u>Armstrong</u> Remedial Plan also already has a process that defines what health care appliances are and how they are approved.  A health care appliance is any assistive device or medical support equipment which has been prescribed and approved by a licensed CDCR physician.  (Sanchez Decl. ¶ 16.)  Health care appliances are prescribed on an individual basis based on whether they have been deemed medically necessary for that inmate so that he or she can have equal access to prison services, programs, or activities.  (<u>Id.</u>)  A personal magnifying glass can be classified as a health care appliance so long as a licensed CDCR physician prescribes such a device to an inmate.  (Sanchez

Decl. ¶¶ 16-20.)  Indeed, in October 2016, Plaintiff was prescribed a five-times magnifying glass.
(Sanchez Decl. ¶ 20, Ex. F; Pl.'s Mot. for Summ. J. 2, ECF No. 76.)  The magnifying glass is now
considered Plaintiff's health care appliance.  (Sanchez Decl. ¶ 20, Ex. F.)  Accordingly, Plaintiff's
request that a personal magnifying glass be recognized as a health care appliance fails because the
Armstrong Remedial Plan broadly defines such appliances to include personal magnifying glasses.

Furthermore, CDCR already provides a list of available medical devices to inmates through
approved catalogs and a list of available medical equipment in the law library.  CDCR provides
MaxiAids catalogs in each of SATF's housing units.  (Sanchez Decl. ¶ 21.)  Inmates may purchase
several different devices ranging from visual aids and magnifying glasses, to speech and hearing aids –
subject to CDCR approval.  (Id.)  Indeed, Plaintiff has utilized the MaxiAids catalog several times.
(Daniels Dep. at 43:20-44:5, 47:14-48:11. 54:10-14, 65:21-25.)  In addition, disabled inmates may
request a copy of SATF's list of available durable medical equipment from SATF's law library.
(Sanchez Decl. ¶ 22.)  The list provides the names of several medical appliances that are commonly
associated with physical disabilities, such as wheelchairs, canes, and eyeglasses.  (Sanchez Decl. ¶ 22,
Ex. G at 044-045, 069-070, 099.)  Accordingly, Plaintiff's second, third, fourth, and fifth requests for
injunctive relief are already governed by the Armstrong Remedial Plan and should be dismissed as
duplicative of the Armstrong class action.  Pride v. Correa, 719 F.3d 1130, 1138 (9th Cir. 2013); Giles
v. Felker, No. 2:11-cv-1825-EFB P, 2014 WL 841291, at *9 (E.D. Cal. Mar. 4, 2014) (recommending
that inmate's injunctive relief claim requiring CDCR to "provide a full medical record to every outside
health care provider at each [inmate's examination]," be dismissed as duplicative of the Plata class
action), report and recommendation adopted, 2014 WL 1330574 (E.D. Cal. Apr. 1, 2014).

3). Plaintiff's Claims for Injunctive Relief Are Not Narrowly Drawn to Address the Denial
of His Magnifying Glass

Requests for prospective relief are limited by 18 U.S.C. § 3626(a)(1)(A) of the Prison
Litigation Reform Act, which requires that the Court find the "relief [sought] is narrowly drawn,
extends no further than necessary to correct the violation of the Federal right, and is the least intrusive
means necessary to correct the violation of the Federal right."  In this case, Plaintiff's requests for
injunctive relief must be narrowly tailored to correct the alleged constitutional violation of failure to

15

receive a personal magnifying glass. However, Plaintiff seeks statewide injunctive relief on how CDCR staff interact with disabled inmates and how CDCR provides them health care appliances. (FAC at 13-14.) Providing high-powered personal magnification glasses to every visually-disabled inmate is outside the current range of options offered under the Armstrong Remedial Plan.

With regard to Plaintiff's request for sensitivity training, Plaintiff demanded that the training be approved by unidentified, non-CDCR disabled persons. (Daniels Dep. at 106:23-107:25.) However, such relief does not relate to Plaintiff's own personal denial of his magnifying glass, and his request is unnecessarily overbroad. 18 U.S.C. § 3626(a)(1)(A). Thus, even if CDCR were to provide such training, it would not prevent a physician from finding that Plaintiff's magnifying glass was not medically necessary. (Sanchez Decl. ¶ 17.) Furthermore, Plaintiff fails to demonstrate how the denial of one magnifying glass impacts CDCR's statewide provision of services to disabled inmates. Compelling CDCR to enact these changes is not narrowly tailored to relieve Plaintiff's denial of a magnifying glass. Dayton Bd. of Ed. V. Brinkman, 433 U.S. 406, 420 (1977) ("… only if there has been a systemwide impact may there be a systemwide remedy.")

4). Plaintiff Lacks Third-Party Standing to Request Systemic Relief on Behalf of All CDCR Inmates

"Standing is the determination of whether a specific person is the proper party to bring a particular matter to the court for adjudication," and a federal court is obliged to examine plaintiff's standing pursuant to Article III of the United States Constitution. See Justice v. Vail, 430 U.S. 327, 3310 (1977).

A plaintiff generally has standing to assert claims for the violation of his/her own legal rights and do not have standing to assert claims for the violations of the legal rights of other persons. See Barrows v. Jackson, 346 U.S. 249, 255 (1953). There is an exception to the general rule, if "the litigant can demonstrate that he or she has suffered a concrete, redressable injury, that he or she has a close relation with the third party, and that there exists some hindrance to the third party's ability to protect his or her own interests." Edmonson v. Leesville, 500 U.S. 614, 629 (1991).

Here, Plaintiff seeks statewide relief but fails to demonstrate any close relationship between himself and all disabled CDCR inmates. (FAC at 14; Daniels Dep. 99:20-100:18.) However, even

assuming that Plaintiff's relationship with these inmates is limited to those with visual disabilities, the inmates are spread across the entirety of the CDCR, and this class of individuals is overbroad. Further, Plaintiff fails to set forth what hindrance, if any, these inmates would have if they chose to assert their own rights. Edmonson v. Leesville, 500 U.S. at 629. All disabled inmates are allowed to use the form 1824 process to request medical services and/or appliances. (Sanchez Decl. ¶¶ 17-18.) In addition, a disabled inmate may file suit in federal court to pursue the alleged constitutional violation, as Plaintiff has done. Accordingly, Plaintiff lacks standing to assert injunctive relief on behalf of third-party inmates.

### b. Plaintiff's Requests for Injunctive Relief Are Moot

If a litigant loses his legally cognizable interest in the outcome of the litigation during its pendency, and thus cannot obtain relief, then the case is moot and should be dismissed for lack of subject matter jurisdiction. McQuillion v. Schwarzenegger, 369 F.3d 1091, 1095 (9th Cir. 2004); Ruvalcaba v. City of L.A., 167 F.3d 514, 521 (9th Cir. 1999). Plaintiff's claim pertains only to his inability to obtain a personal magnification device from SATF staff. (Rhoan Decl. ¶ 3, Ex. B; FAC 3-14.) In October 2016, Plaintiff saw an optometrist who determined the device was medically necessary and ordered Plaintiff a magnifying glass. (Pl.'s MSJ at 2, ECF No. 76.) Accordingly, because Plaintiff has now received the relief requested in this action, his claims for injunctive relief are moot. McQuillion, 369 F.3d at 1095; Ruvalcaba, 167 F.3d at 521. Furthermore, Plaintiff's claims for injunctive relief do not fall into the recognized exception to moot claims for cases that are capable of repetition, yet evading review." Fed. Election Comm'n v. Wisconsin Right to Life, Inc., 551 U.S. 449, 462 (2007). To fall within the exception, Plaintiff must demonstrate that both the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and there is a reasonable exception that the same complaining party will be subject to the same action again. Spencer v. Kemna, 523 U.S. 1, 17 (1998). Plaintiff does not fall within the limited exception. If the five-times magnifying glass is insufficient, Plaintiff can seek a CDCR physician's approval for a higher powered magnifying glass, or request one through the CDCR form 1824 process. (Sanchez Decl. ¶ 17.) In addition, the inevitability of Plaintiff's unfortunate complete blindness forecloses the possibility of some speculative harm. Accordingly, Plaintiff's requests for injunctive relief are moot.

### c. Plaintiff is Not Entitled to Compensatory Relief

As previously stated, in order for Plaintiff to recover monetary damages under the ADA, he must demonstrate that the denial of the magnifying glass was based on intentional discrimination. Here, because Plaintiff has made no showing of any intentional discrimination against Plaintiff on account of his disability, he is not entitled to monetary damages. Plaintiff has failed to provide undisputed evidence that the denial of a magnifying glass by SATF medical staff was he was denied a magnifying glass out of intent to discriminate and deny him the benefits of a public program or a reasonable accommodation. In addition, for the reasons explained below, Plaintiff's ADA claim is not based on discrimination, but rather on his belief that he was denied appropriate medical assistance. Accordingly, Plaintiff is not entitled to compensatory relief.

### d. Plaintiff's Issuance of a Magnifying Glass is an Inadmissible Subsequent Remedial Measure

Rule 407 of the Federal Rules of Evidence states that when measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures are not admissible to prove negligence or culpable conduct. Fed. R. Evid. 407. In this instance, by way of motion for summary judgment, Plaintiff contends that the November 2016 magnifying glass "answer[ed] my claim by providing me with the appropriate medical device at the State's expense. (Pl.'s MSJ at 3:11-12.) Although Plaintiff is unsure if the magnifying glass will eventually work, he is convinced it represents a "capitulation to [his] demands for a [m]edical device." (Id. at 1:21-23, 2:14-15.) Accordingly, the admission of the 2016 issuance of a personal magnifying glass as proof that Defendant Sherman violated Plaintiff's rights under Title II between 2010 to 2012, is inadmissible under Rule 407.

Based on the foregoing, Plaintiff's motion for summary judgment should be denied as he is not entitled to the relief requested.

### 2. Defendant's Motion for Summary Judgment

Defendant argues that Plaintiff cannot prove that SATF staff discriminated against him or that he was excluded from participating in SATF's services, programs, or activities.

In order to establish a Title II ADA claim, Plaintiff must demonstrate that he was denied access to SATF's programs, services, and activities because of his disability, i.e. vision impairment. Pierce, 526 F.3d at 1214-15.

Plaintiff may not render an opinion as to how any injury or condition concerning his need for a personal magnifying glass because Plaintiff is not a qualified expert witness concerning treatment of vision problems. Fed. R. Evid. 701. Between June 17, 2010, and January 18, 2012, Plaintiff went to the E-Facility law library, sometimes twice a day, to use the computers, Galileo, and Optelec machines. (Barba Decl., Exs. A-C.) Plaintiff also has access to the prison's Talking Book program, which allows disabled inmates to keep audiobook machines in their individual housing units so they can play audiobooks. (Sanchez Decl. ¶ 12, Ex. B at 017-020; Daniels Dep. at 116:9-117:4.) Plaintiff was also provided with a tapping cane and vision-vest to assist him navigate the prison. (Sanchez Decl. ¶ 20; Ex. E; Daniels Dep. at 28:23-29:17, 29:20-30:10.)

In this instance, SATF medical staff determined that Plaintiff's requests for a magnifying glass were not medically necessary. (Corral Decl., Ex. A 002, 006-009, 012, 016-020; Ex. B at 011-013.) Plaintiff contends that he was excluded from having a magnifying glass because he felt other disabled inmates received various health care appliances, but Plaintiff was repeatedly told that magnifying glasses were not medically necessary, and he had access to full page magnifiers, Galileo, and Optelec machines in the law library. (Id.) Contrary to Plaintiff's claim, the evidence presented demonstrates that Plaintiff's ADA claim is not based on discrimination, but rather on his belief that he was provided inadequate medical treatment by failure to provide a personal magnifying glass which is insufficient under the ADA. See Simmons v. Navajo County, Ariz., 609 F.3d at 1022 ("The ADA prohibits discrimination because of disability, not inadequate treatment for disability") (citing Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996)).

Plaintiff also contends that SATF staff failed to consider a non-CDCR physician's recommendation for a magnifying glass into consideration. (FAC at 10.) However, under the Armstrong Remedial Plan, only CDCR licensed physicians can prescribe health care applications upon a showing of medical necessity. (Sanchez Decl. ¶¶ 16-17.) Between June 17, 2010, and January 18, 2010, no CDCR physician found that a magnifying glass was medically necessary. (Corral Decl., Ex.

A at 002, 006-009, 011-013, 016-0120.)  Therefore, a non-CDCR physician's recommendation is insufficient to justify the prescription of a health care device.  Furthermore, the fact that Plaintiff disagrees with the CDCR-physicians' determinations is insufficient to give rise to a claim under the ADA.  Simmons, 609 F.3d at 1022; Bryant, 84 F.3d at 249.

Moreover, SATF was not obligated to provide Plaintiff with a personal magnifying glass. Section 28 of the Code of Federal Regulations, section 35.135 provides:

> This part does not require a public entity to provide individuals with disabilities personal devices, such as wheelchairs; individually prescribed devices, such as prescription eyeglasses or hearing aids; readers for personal use or study; or services of a personal nature including assistance in eating, toileting, or dressing.

28 C.F.R. § 35.135.[4]  Under the applicable ADA regulation, which is not inconsistent with the Armstrong Remedial Plan, SATF had no obligation to provide Plaintiff a personal magnifying glass. See Low v. McGinness, No. 2:10-cv-2398 LKK JFM (PC), 2012 WL 1131534, at *2 (E.D. Cal. Mar. 30 2012) (blind inmate failed to state an ADA against county jail for failing to provide him with eyeglasses).  Therefore, because SATF was not obligated to provide Plaintiff with a personal magnifying glass, he was not excluded from participating in SATF's services, programs, or activities on the basis of his blindness.

Furthermore, for the reasons explained, Plaintiff is not entitled to injunctive and/or compensatory damages in this action.  Accordingly, Defendant Sherman's motion for summary judgment should be granted.

## VI.

## CONCLUSION AND RECOMMENDATIONS

As discussed herein, the Court finds that Plaintiff did not meet his burden on summary judgment in that he is not entitled to the relief requested.  In contract, Defendant Sherman has presented undisputed evidence that the denial of the magnifying glass was not done out of discrimination and Plaintiff was not denied participation in SATF's programs, services, and activities

---

[4] This regulation was promulgated by the United States Attorney General, the official charged with promulgating implementing regulations regarding ADA implementation by public entities.  42 U.S.C. § 12134(a).  Accordingly, it is entitled to substantial deference.  Blum v. Bacon, 457 U.S. 132, 141 (1982) ("the interpretation of an agency charged with the administration of a statute is entitled to substantial deference").

because of his disability, i.e. vision impairment, but rather on the medical determination that it was not necessary. Accordingly, it is HEREBY RECOMMENDED that:

       1.     Plaintiff's motion for summary judgment be denied;

       2.     Defendant's motion for summary judgment be granted; and

       3.     Judgment be entered in favor of Defendant Sherman.

       These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).


IT IS SO ORDERED.

Dated:   **August 2, 2017**

                             UNITED STATES MAGISTRATE JUDGE